C. A. GODING, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

H. A. HOWE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 71153, 67555. Promulgated March 24, 1936.

*Eugene Meacham, Esq.*, for the petitioners.
*Nathan Gammon, Esq.*, and *E. A. Tonjes, Esq.*, for the respondent.

OPINION.

TURNER: On their returns the petitioners treated the redemption of the preferred stock of the J. W. Carter Co. as a sale and reported a profit thereon. In their petitions they allege that the profit so reported was correct. On the basis of amendments to the petition, filed in accordance with leave granted at the hearing, it is now contended that the amounts received in redemption of the stock represented the return of capital and that the petitioners are entitled to refunds.

It is the respondent's contention that the stock was redeemed at such time and in such manner as to bring the transaction within the provisions of section 115 (g) of the Revenue Act of 1928[1] and that the distribution and redemption of preferred stock was, under the provisions of that section, a taxable dividend.

A review of the history of the corporation convinces us that the redemption of the stock was in keeping with the consistent practice and method for distributing earnings to its stockholders. Great stress is placed on the statement made on the witness stand by petitioner Goding, that the redemption of the stock was not a part of any unified plan of distributing corporate earnings. Regardless of whether the issuance and redemption of preferred stock was in accordance with any unified plan therefor, it is obvious that it was in accordance with a consistent practice of the corporation from its inception. Except for cash dividends approximating the 8 percent cumulative dividend on the preferred stock, no formal distribution of earnings was ever made, yet we find that prior to January 1, 1930, earnings of the corporation in the amount of $954,000 had been distributed to the stockholders through the issuance and redemption of preferred stock. This was approximately three times the amount that had been distributed as cash dividends on preferred stock.

It is argued by the petitioner that corporate surplus was not available for the distribution of the dividend and that the respondent's case must fall for that reason. While it is true that book surplus at December 31, 1929, was only $101,410.90, and on January 2, 1930, there was a cash dividend of $70,000, as well as a redemption of the preferred stock in question, it must be remembered that the

---

[1] SEC. 115. (g) *Redemption of stock.*—If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend. In the case of the cancellation or redemption of stock not issued as a stock dividend this subsection shall apply only if the cancellation or redemption is made after January 1, 1926.

charge to surplus in respect of the preferred stock had been made at the time the stock was issued. The facts show that the earnings of the corporation up to that date were more than sufficient to cover both items. Up to the beginning of the taxable year the corporation had paid cash dividends amounting to $322,960 and had redeemed preferred stock amounting to $954,000, or a total of $1,276,960 over the life of the company. The earnings over the same period amounted to $1,529,573.10 and this amount does not include surplus at April 30, 1922, in the amount of $44,363.23, the source of which is not shown.

Mention is made that in 1926 or 1927 certain bankers complained that the dividend requirements of the petitioner's preferred stock were too high and that this was the occasion for the redemption of at least a portion of the preferred stock. This contention is not at all convincing, however, since the facts show that subsequently the corporation continued to issue preferred stock as dividends and to retire portions thereof at intervals in the same manner as had been done before. According to petitioner Goding's recollection, this criticism of the bankers came shortly after the retirement on January 1, 1926, of preferred stock having a par value of $461,000. In the face of this complaint, however, the corporation, on January 2, 1927, issued as a dividend preferred stock of the par value of $745,-000 and on January 24, 1929, issued another dividend in preferred stock amounting to $150,000. In this connection the petitioner cites *George A. Lembcke*, 33 B. T. A. 700. The facts here are altogether different from the facts in that case, which there disclosed a purpose and intention of compliance with the recommendation of the bankers for readjusting the capital structure of the corporation. In the light of those facts, there was no basis for the claim that the redemption of the stock was such as to constitute a dividend.

In the present case the petitioner, Goding, directed and controlled all of the activities of the corporation. It appears that the consistent practice was to issue preferred stock against corporate earnings, rather than to pay the earnings to the stockholders in the form of cash dividends. In the meantime, however, the stockholders made substantial withdrawals from the corporation from time to time. At some subsequent date, determined by Goding, the preferred stock so issued as dividends was redeemed and amounts were credited to the accounts of the stockholders equal to the par value of the stock so called in. So far as the record shows, the amounts of preferred stock redeemed, plus cash dividends paid, never at any time exceeded the earnings or profits of the corporation even though the books of the company did not show earnings as such by reason of the charges against surplus at the time the preferred stock was issued. Clearly the redemption of the stock in question was made at such

time and in such manner as to constitute the redemption thereof a taxable dividend within the meaning of section 115 (g), *supra*. *Randolph* v. *Commissioner*, 76 Fed. (2d) 472, affirming 28 B. T. A. 773; *Hill* v. *Commissioner*, 66 Fed. (2d) 45, affirming 27 B. T. A. 73; *Adler* v. *Commissioner*, 77 Fed. (2d) 733, affirming 30 B. T. A. 897.

Furthermore, it does not appear from the record before us that the amounts received in redemption of the preferred stock should be excluded from income, even though it be held that the distribution did not constitute a dividend. If, as the petitioners contend, the issuance and redemption of preferred stock from time to time were not distributions of earnings but distributions chargeable to capital, the facts would indicate that the basis for preferred stock in the hands of the stockholders had long since been exhausted and under section 115 (c) of the Revenue Act of 1928, the entire amount received by the petitioners during the taxable year would be gain from the sale or exchange of property.

The remaining issue has to do with the determination of losses sustained by the petitioner, Goding, from the sale of Fourth & First Banks, Inc., stock. It is stipulated that he was the owner of 638 shares of stock, acquired by purchase, exchange, stock dividends, and other methods, at a total cost to him of $94,652.80, and that he sold during the taxable year 388 shares of this stock for a total price of $51,256, leaving 250 shares unsold. It is his contention that the remaining shares of stock became worthless during the taxable year and that he is entitled to a deduction of the balance of cost by reason of the worthlessness of these 250 shares of stock. The facts do not give support to this contention. While the selling price of the stock declined materially and sales were made in small lots only, it appears that the stock sold on December 31 at as much as $52.25 a share, that sales were also made in 1931 at prices ranging from $16 to $8, and in 1932 at prices from $8 to $8.50 per share. It is true that none of these sales involved as much as 250 shares of the stock. They do indicate, however, that the stock was not worthless during the taxable year as claimed by petitioner. There is no showing whatever on the part of the petitioner that the block of stock which remained unsold in 1930 could not have been sold in small lots over a period of time at prices approximating those at which other lots of stock were sold during the years 1930, 1931, and 1932. The loss from the sale of 388 shares is deductible and should be computed on the basis of the stipulated cost of the stock. The remaining 250 shares of stock not having been sold and not being worthless during the taxable year, there is no merit to the petitioners' position on the second issue.

*Decision will be entered under Rule 50.*